NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0843n.06
Filed: December 12, 2007

No. 06-6527

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| James Baymon and Lorrene Early Baymon, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| State Farm Insurance Company, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE:**     **Merritt, Cole, and Griffin, Circuit Judges.**

**MERRITT, Circuit Judge.**     Plaintiffs James and Lorrene Early Baymon obtained a homeowner's insurance policy issued by defendant State Farm Insurance Company. After the Baymons lost their home in a fire, they filed a claim with State Farm. Due to material misrepresentations made to State Farm by the Baymons about their financial condition at the time of the fire and the suspicious origin of the fire, State Farm denied the claim and voided the policy. The Baymons filed suit against State Farm in Union Circuit Court in Morganfield, Kentucky, claiming breach of contract for failure to pay the loss claim, bad faith in denying the claim and violations of the Kentucky Unfair Claims Settlement Practices Act, KRS 304.12-230, and the Kentucky Consumer Protection Act, KRS 367.170. The case was removed by State Farm to federal

court based on diversity jurisdiction. State Farm moved for summary judgment which was granted by the district court. (J.A. at 35) The Baymons now appeal, alleging that genuine issues of material fact preclude summary judgment and that the district court erred as a matter of law on a variety of issues. For the reasons stated below, we do not regard the arguments presented by the Baymons as substantial or plausible, and we affirm the district court's grant of summary judgment in favor of State Farm based on the Baymons' false statements made to State Farm during the claims process which voided their policy.

## I.

The material facts are not in dispute. On Sunday, March 30, 2003, James and Early Baymon suffered a fire loss that totally destroyed their home. The Baymons left for church at about 9:50 a.m. The fire was reported to the Morganfield Dispatch at about 10:12 a.m., which immediately reported the fire to the volunteer fire department. Clyde Vos, the local fire chief who lives two houses away from the Baymons, also received a phone call from a neighbor a few minutes past 10 a.m. reporting that the Baymons' house was on fire. The Baymons were notified in person at church that their home was on fire and they immediately left and returned home.

The Baymons reported the loss to State Farm on Monday, March 31, 2003. A claims representative, Brad Brown, contacted the Baymons by phone. On April 2, 2003, the claim was referred to State Farm's Special Investigative Unit because State Farm had learned that the Baymons' home was scheduled to be sold at foreclosure on April 4, 2003, two days hence, the Baymons had filed for bankruptcy in 2002 and the responding fire department had reported the fire to the State

Police Investigator as being of a suspicious origin. State Farm learned this information from its own investigation, not from the Baymons.

On April 4, 2003, State Farm Claims Representative Chuck Coppinger took a recorded statement from the Baymons. In response to Coppinger's questions, it is undisputed that the Baymons made several misrepresentations as to their financial status, including the status of their mortgage. Although Coppinger never expressly asked James Baymon if his house was set for immediate foreclosure, he asked in many different ways if the Baymons were current with their mortgage payments and taxes, to which James Baymon always said yes. Coppinger also asked if there were any liens on their house or if they were involved in any law suits, to which James Baymon said no. Coppinger specifically asked Mrs. Baymon, "Has your mortgage ever been foreclosed on?" She answered, "No."

Several months later, as part of its investigation into the Baymons' claim, the Baymons were examined under oath and they admitted that some of the answers they had given immediately after the fire were false. Specifically, James Baymon admitted that he knew his house was scheduled for foreclosure on April 4 and he knew that he owed on his taxes and mortgage. James Baymon said that he gave false statements because he did not like Coppinger's "attitude" and he found the questions asked by Coppinger inappropriate and too personal.

Likewise, Early Baymon testified under oath that she knew that the house was scheduled to be sold at foreclosure, although she did not know the exact date at the time, and she knew that they owed back taxes. When asked why she lied to Coppinger after the fire, she answered, "I wasn't thinking."

The Baymons' policy with State Farm about misrepresenting facts is clear. It reads in pertinent part:

> **Concealment or Fraud.** This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

Homeowners Policy at 19 (J.A. at 91). Based on the policy language, State Farm sent a letter to the Baymons on October 2, 2003, voiding their policy as of March 30, 2003, the date of the fire, and denying their claim. (J.A at 22)

## II.

The Baymons raise numerous issues on appeal. Many of the appeal issues are interwoven and arise from their basic argument that State Farm acted in bad faith in denying their claim. Specifically, the Baymons argue that (1) the questions asked by the State Farm claims adjustor shortly after the loss were intentionally vague and misleading as part of an effort by State Farm to elicit a falsehood from them so that the fire loss claim could be denied; (2) any misrepresentation made by the Baymons that was not given under oath cannot provide the basis to void the policy; (3) the lack of prejudice to State Farm due to the Baymons' misrepresentations precludes State Farm from denying the claim; (4) Mrs. Baymon is an "innocent spouse" such that the loss claim as to her should not be denied; (5) they were ignorant of the consequences of making misrepresentations about their finances to State Farm and should not be held accountable for them; (6) the later truthful statements by the Baymons made under oath estop State Farm from relying on the earlier statements to void the policy and deny the claim; (7) State Farm had unclean hands and acted in bad faith in

both the investigation and in denying the claim; (8) State Farm violated the Kentucky Unfair

Settlement Practices Act by failing to investigate the claim in good faith; and (9) State Farm violated

the Kentucky Consumer Protection Act by failing to deal with their claim in good faith.

Under Kentucky law, the rights of parties to an insurance policy are to be determined by the

terms of the policy, unless contrary to existing law or public policy. *State Farm Mutual Ins. Co. v.*

*Fireman's Fund American Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1997). It is undisputed that both

James and Early Baymon made false statements to the State Farm representative on April 4, 2003,

five days after the fire, in violation of clear policy language, as well as general ethical principles

requiring truthfulness in such transactions. They denied being behind on their mortgage payments,

and they denied knowing the home was set for foreclosure that very day. Statement of James

Baymon at pp. 21, 36, 39, 65 (Apr. 4, 2003) (J.A. at 11-13, 108); Statement of Early Baymon at pp.

29, 35, 36 (J.A. at 121, 123-24). They both later admitted under oath to knowing that the statements

made to Coppinger were false when they made them. James Baymon Examination Under Oath at

pp. 45-47 (J.A. at 14-16); Lorrene Early Baymon Examination Under Oath at pp. 15, 59, 61 (J.A.

at 96, 102-04). They clearly "intentionally concealed or misrepresented [a] material fact or

circumstance relating to this insurance," thereby voiding the policy and relieving State Farm from

paying the loss.

In response, the Baymons argue that factual issues preclude summary judgment for State

Farm. They argue that because the statements made to Coppinger on April 4 were not under oath

they are not sufficient to void the policy. This argument is without merit. There is no requirement

that misrepresentations must be made under oath.

The Baymons contend that because the claims adjuster did not expressly ask James Baymon if a foreclosure action had been filed (when the adjuster in fact did know that a foreclosure action had been filed) we should conclude that the insurance company was trying to trick or trap the Baymons into giving false answers to the questions so it would not have to pay the claim. The adjuster asked him several times and in several different ways if the mortgage was current, if the Baymons were behind on house payments or if the Baymons had been sued or involved in any lawsuits. James Baymon replied that he was current with his mortgage and that he not ever been sued. Moreover, the adjuster did specifically ask Early Baymon if the property was in foreclosure, which she denied. She was also asked if there were any liens on the property or if she had ever been sued, to which she said no.

The questions were designed to elicit information about the Baymons' financial condition and were straightforward, reasonable questions. There is no requirement that Mr. Baymon be directly asked if his house was in foreclosure. Despite the Baymons' challenges to the manner of questioning, there is no evidence that State Farm was trying to avoid paying the claim through deceit in the questioning process. It was the Baymons who engaged in deceitful conduct.

The Baymons next contend that they did not know that giving false answers to the questions posed by State Farm could void their policy. They claim that Coppinger, the adjuster, should have told them that false answers could void their policy. A review of the transcript shows that Coppinger tried asking questions in a variety of different ways to ensure that the Baymons understood his questions. He used words like "are your house payments current" and "have you ever been sued" or "have you ever been involved in a lawsuit." The questions were easily understandable by anyone.

The Baymons make no serious argument that they lacked the intelligence to understand the questions; in fact James Baymon admitted that he did not answer the questions truthfully because he found them "inappropriate" and "too personal" — not because he did not understand them. Not only did the insureds contract not to lie; the law generally does not condone lying.

The Baymons also argue that State Farm must demonstrate prejudice due to the misrepresentations in order to void the policy. They argue that because State Farm knew that some of their statements were false at the time they were given or shortly thereafter the company suffered no prejudice in pursuing its investigation. The policy was voided due to breach of the terms of the contract, not due to a tort or some other cause of action where detrimental reliance or injury must be demonstrated. The policy provisions prohibiting false statements are valid and enforceable.

The Baymons also contend that the fact that State Farm later took statements from them under oath estops State Farm from denying the claim and voiding the policy because once State Farm knew of the misrepresentations, any continuing investigation was in bad faith. This argument is without merit. The fact that State Farm undertook a later examination under oath does not negate the effect of the prior misrepresentation. The fact that State Farm may have known of the misrepresentations at the time they were made does not relieve it or prohibit it from making a full investigation. It certainly is not bad faith for an insurance company to undertake a full investigation, even if it believes it knows the facts. In addition to gathering information, an investigation may be done to verify previously obtained information or beliefs. The Baymons' own expert conceded that examinations under oath are routine in many investigations.

The Baymons further argue that Early Baymon should be permitted to proceed with a separate claim for the fire loss because she is an "innocent spouse." This claim was not raised below and the district court did not address it. Rather than rely on "waiver," we note that the argument is wholly without merit. First, Mrs. Baymon is not an innocent spouse because she also made misrepresentations to the claims adjuster on April 4. She told him that she had never been sued and she did not know about any liens on the property. When specifically asked if the Baymons' mortgage had ever been foreclosed on, she answered no. She later admitted under oath that these statements were false. In addition, the policy states that it is void "if you [have] *or any other insured under this policy* has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance . . . ."

Underpinning many of the challenges raised above and the heart of the Baymons' appeal is their challenge to the district court's dismissal of their bad faith claim. An insured must prove three elements to prevail on a bad faith claim under Kentucky law:

(1) The insurer must be obligated to pay the claim under the terms of the policy;

(2) The insurer must lack a reasonable basis in law or fact for denying the claim; and

(3) It must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed
. . . .

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). The record contains no evidence creating a material dispute of fact on this issue.

Part of the Baymons' bad faith claim hinges on the fact that one of the reasons for denying the claim was the fact that the fire was of suspicious origin and the Baymons had the opportunity and

motive to start the fire. Linked to this challenge is the Baymons' claim that State Farm encouraged the state fire investigators to press arson charges against James Baymon, charges that were later dismissed. The fact that Mr. Baymon was ultimately cleared of criminal wrongdoing does not make it bad faith on the part of State Farm to investigate or even to deny the loss claim. The initial report by the local fire chief noting that the fire was of suspicious origin is what brought the case to the attention of the state investigators — not any action by State Farm.

Lastly, the Baymons brought a claim under the Kentucky Consumer Protection Act. As noted by the district court in dismissing the claim, the same three elements necessary to prove bad faith under Kentucky law must also be proven in a claim under the Consumer Protection Act. *Wittmer*, 864 S.W.2d at 890. The same reasons that support dismissal of the bad faith claim also support dismissal of the claim under the Consumer Protection Act.

For the foregoing reasons, the judgment of the district court is affirmed.