ENTERED NOV 2 6 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-298
NM-CUM- 11-21-14

PATRIOT INSURANCE
COMPANY,

Plaintiff

v.

QUALITY HOME CARE,
LLC,

Defendant

ORDER ON PLAINTIFF'S
MOTION FOR
SUMMARY JUDGMENT

Before the court is plaintiff Patriot Insurance Company's motion for summary judgment on both counts of its complaint, which addresses a claimed loss under plaintiff's insurance policy. Defendant Quality Home Care, Inc. has filed no opposition to the motion. For the following reasons, the motion is granted.

PROCEDURAL HISTORY

In its complaint filed on July 15, 2013, plaintiff seeks in count I a declaratory judgment that the insurance policy issued to defendant does not cover the claimed loss and alleges in count II a fraudulent insurance act claim under 24-A M.R.S. § 2186 (2013).

Defendant filed an answer on September 9, 2013 and an amended answer and a counterclaim on January 28, 2014.[1] Following an unsuccessful mediation, counsel for defendant moved to withdraw on May 19, 2014 because the attorney-client relationship had broken down. The court granted the motion to withdraw

---

1 Plaintiff challenges the effectiveness of the amendment because it was emailed but not formally served as required under the Maine Rules of Civil Procedure. (Pl.'s Br. 2 n.1.)

on June 10, 2014, but stated that defendant was obligated to retain other counsel or notify the court that defendant will be representing itself.[2] The court has received no communication from defendant.

On September 22, 2014, plaintiff filed a motion for summary judgment. Plaintiff attached the required Rule 7(b)(1) notice. Plaintiff represents that the motion was mailed to three of defendant's business addresses in Kentucky, including an address where plaintiff had reached defendant before trial. Defendant has not filed any opposition to the motion or any other communication with the court. Accordingly, the motion is considered unopposed.

## BACKGROUND

The following facts, supported by record citations, are deemed admitted.[3] On February 24, 2013, a fire caused damage to the property at 23 Virginia Place in Limestone, Maine. (Supp. S.M.F. ¶¶ 7, 11.) At issue in this case is whether plaintiff is liable for the damage under an insurance policy plaintiff issued to defendant.

Defendant is a limited liability company organized in Kentucky that was established to perform in-home care to the elderly. (Supp. S.M.F. ¶¶ 5-6.) Defendant owns the damaged building, a thirty-eight unit apartment complex, which was listed on the insurance policy. (Supp. S.M.F. ¶¶ 7, 9.) The insurance policy was in effect at the time of the fire. (Supp. S.M.F. ¶¶ 10-11.) After the fire,

---

2 Because defendant is an LLC, an attorney must represent defendant in this case. See 4 M.R.S. § 807 (2013).
3 See M.R. Civ. P. 56(h)(4).

2

defendant submitted claims for coverage for property loss, frozen pipes and water loss, and business income loss. (Supp. S.M.F. ¶ 12-14.)

Plaintiff investigated the claims and denied coverage on June 24, 2013. (Supp. S.M.F. ¶ 18.) Plaintiff claims that defendant made false statements to plaintiff's investigators in violation of the policy and that the building was vacant for more than 60 days leading up to the fire, which voids coverage for acts of vandalism. According to plaintiff's fire investigator, arson was the cause of the fire at the building. (Supp. S.M.F. ¶¶ 16, 19, 22-50.)

As part of the investigation, plaintiff took statements from Craig Perkins, an owner of Quality Home Care who submitted the insurance claims. (Supp. S.M.F. ¶¶ 16, 19.) In his first recorded statement, Mr. Perkins claimed that Quality Home Care leased the building to Frankco Disaster Recovery, LLC ("Frankco"). (Supp. S.M.F. ¶ 22.) Mr. Perkins presented a lease signed by himself for Quality Home Care and Rex Toler for Frankco. (Supp. S.M.F. ¶¶ 23, 24.) Plaintiff subsequently learned that Frankco was dissolved at the time of the fire or shortly thereafter. (Supp. S.M.F. ¶ 26.) Nevertheless, Mr. Perkins claimed a loss of business income in the amount of $18,500 per month based on the lease agreement with Frankco. (Supp. S.M.F. ¶ 25.) Mr. Perkins also claimed that Frankco responded to a Craigslist post advertising the availability of the premises for lease. (Supp. S.M.F. ¶ 28.) In his first statement, Mr. Perkins denied that he had any relationship with Mr. Toler or the owner of Frankco, Frank Fitzgerald. (Supp. S.M.F. ¶¶ 27, 30.)

Plaintiff continued its investigation after taking Mr. Perkins's recorded statement and decided to conduct an examination of Mr. Perkins under oath. At the examination, Mr. Perkins admitted that Mr. Toler had not signed the lease

3

agreement and that Mr. Perkins had signed Mr. Toler's name. (Supp. S.M.F. ¶ 33.) Mr. Perkins further admitted that he knew Mr. Toler and Mr. Fitzgerald, that Mr. Perkins contributed $15,000 to the start-up Frankco, and that he was a member of Frankco. (Supp. S.M.F. ¶ 32.) He further explained that Frankco had not responded to a Craigslist ad about leasing the building but that Mr. Perkins had a conversation about the lease with Mr. Fitzgerald in Long Island, New York. (Supp. S.M.F. ¶ 29.)

Leading up to the fire, Mr. Perkins took steps to evict tenants who refused to leave the building, including shutting off utilities to the building sometime in October or November 2012. (Supp. S.M.F ¶¶ 42-43.) The electricity was not switched on again prior to the fire. (Supp. S.M.F. ¶ 42.) By January, only a few tenants remained in the building, and Frankco did not occupy the premises prior to the fire. (Supp. S.M.F. ¶¶ 44-45.)

## DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Dussault v. RRE Coach Lantern Holdings, LLC, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting F.R. Carroll, Inc. v. TD Bank, N.A., 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." McIlroy v. Gibson's Apple Orchard, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting N. E. Ins. Co. v. Young, 2011 ME 89, ¶ 17, 26 A.3d 794). When the plaintiff is the moving party, "the plaintiff has the burden to demonstrate that each element of its claim is established without dispute as to

4

material fact within the summary judgment record." Cach, LLC v. Kulas, 2011 ME 70, ¶ 8, 21 A.3d 1015 (quoting N. Star Capital Acquisition, LLC v. Victor, 2009 ME 129, ¶ 8, 984 A.2d 1278). Only facts properly supported by record citations are deemed admitted when the non-moving party fails to controvert those facts. Id. ¶ 9.

B. Count I

1. False Statements

Plaintiff first argues that the loss is not covered because defendant's representative made false statements to plaintiff's investigators after the fire. The policy states:

**CONCEALMENT, MISREPRESENTATION or FRAUD**

We do not provide coverage to one or more insureds ("insureds") who, at any time:

1. Intentionally concealed or misrepresented a material fact;
2. Engaged in fraudulent conduct; or
3. Made a false statement;

relating to this insurance.

(Supp. S.M.F. ¶ 21.) Plaintiff's evidence shows that Mr. Perkins made false statements about his relationship with the members of Frankco, his own involvement in starting up Frankco, the events leading up to the lease between Quality Home Care and Frankco, and that he signed Mr. Toler's name on the lease. In addition, Mr. Perkins submitted a claim for lost business income when he knew Frankco had dissolved and would probably not be making any future payments under the lease. Taking these facts as admitted, plaintiff has demonstrated that Mr. Perkins made false statements on behalf of defendant in his recorded statement to plaintiff's investigators. These false statements are

5

sufficient for plaintiff to deny coverage under the policy. See Baymon v. State Farm Ins. Co., 257 F. App'x. 858, 861 (6th Cir. 2007).

2. 60 Day Vacancy

Plaintiff has also shown that the property was vacant for 60 days leading up to the fire. The policy states:

6. Vacancy

    a.  Description of Terms

> (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:
> . . .
> (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>> (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations;
>> (ii) Used by the building owner to conduct customary operations
> (2) Buildings under construction or renovation are not considered vacant.

    b.  Vacancy Provisions

> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
>> (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>>> (a) Vandalism;
>>> (b) Sprinkler leakage, unless you have protected the system against freezing
>>> (c) Building glass breakage;
>>> (d) Water Damage;
>>> (e) Theft; or
>>> (f) Attempted theft.

(Supp. S.M.F. ¶ 20.) Defendant was not using the building for its own purposes, but had acquired it for investment income. (Supp. S.M.F. ¶ 40.) Mr. Perkins

6

stated that he was trying to get tenants out of the building in October or November 2012. Because there were only a couple of tenants left in January and Frankco had not moved into the premises, less than 31% of its square footage was being used to conduct a business's customary operations leading up to the fire on February 24, 2013.

Under the policy, plaintiff is not obligated to cover loss due to vandalism in the event the building has been vacant for more than 60 days. The fire started as a result of arson. Using the ordinary meaning of an undefined term, arson is a type of vandalism under this type of exclusion where fire is not a separately listed cause of loss. See Bear River Mut. Ins. Co. v. Williams, 153 P.3d 798, 801 (Utah Ct. App. 2006) (holding "that the policy language excludes coverage of vandalism or malicious mischief losses regardless of the means used to inflict those losses, even when a loss could also be characterized by a more specific term such as arson"); Battishill v. Farmers Alliance Ins. Co., 127 P.3d 1111, 1114-15 (N.M. 2006) (same); Costabile v. Metro. Prop. & Cas. Ins. Co., 193 F. Supp. 2d 465, 478 (D. Conn. 2002) ("[W]here . . . a policy section provides all-risk coverage and does not list fire and vandalism as separate causes of loss, no ambiguity arises and arson does indeed fall within the definition of vandalism."). Although there are contrary decisions, those cases usually involve a policy that refers to vandalism and fire as separate perils but only excludes coverage for vandalism in the event of prolonged vacancy. See, e.g., Bates v. Hartford Ins. Co. of Midwest, 787 F. Supp. 2d 657, 662 (E.D. Mich. 2011). The vandalism exclusion provides a separate basis for plaintiff's denial of coverage.

C. Count II

1. Fraudulent Insurance Act

In the second count, plaintiff alleges defendant committed a fraudulent insurance act under 24-A M.R.S. § 2186 (2013). That section provides, "[i]n a civil action in which it is proven that a person committed a fraudulent insurance act, the court may award reasonable attorney's fees and costs to the insurer." 24-A M.R.S. § 2186(7). Fraudulent insurance act is defined as:

A. "Fraudulent insurance act" means any of the following acts or omissions when committed knowingly and with intent to defraud:
   (1) Presenting, or causing to be presented, or preparing any information containing false representations as to a material fact with knowledge or belief that the information will be presented by or on behalf of an insured, claimant or applicant to an insurer, insurance producer or other person engaged in the business of insurance concerning any of the following:
   . . .
      (c) A claim for payment or benefit pursuant to an insurance policy . . . .

24-A M.R.S. § 2186(1)(A). As discussed above, Mr. Perkins made false statements on behalf of defendant to obtain payment under the company's insurance policy. His fraudulent intent can be inferred from the circumstances. See United States v. Goodchild, 25 F.3d 55, 60 (1st Cir. 1994) ("Fraud is usually proven by circumstantial evidence. Direct proof of a knowing intent to defraud is rare."). Plaintiff is therefore entitled to its costs and attorney's fees.

D. Counterclaim

In its counterclaim, defendant alleged plaintiff wrongfully denied coverage for defendant's claim. As discussed above, the denial of coverage was proper.

8

The entry is

> Plaintiff's Motion for Summary Judgment is GRANTED. Judgment is entered in favor of Plaintiff and against Defendant on Plaintiff's Complaint and Defendant's Counterclaim.
>
> Within 30 days of the date of this order, Plaintiff will file an affidavit of its attorney's fees and costs. 24-A M.R.S. § 2186(7).

Date: _11·21·14_

Nancy Mills
Justice, Superior Court

CUMBERLAND CV-13-298

9

MATTHEW MEHALIC ESQ
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600

QUALITY HOME CARE LLC
10606 STONEBREAKER RD
LOUISVILLE KY 40291