**Carl L. LACROSSE, Appellant**

v.

**OWNERS INSURANCE COMPANY, a/k/a and d/b/a Auto–Owners Insurance Company; Progressive Northern Insurance Company; and Kenneth V. Anderson, Administator of the Estate of Sarah Darnall, Appellees**

and

**Owners Insurance Company, Cross–Appellant**

v.

**Carl M. LaCrosse; Progressive Northern Insurance Company; and Kenneth Anderson, Administrator of the Estate of Sarah Darnall, Cross–Appellees**

NO. 2015–CA–000418–MR, NO. 2015–CA–000479–MR

Court of Appeals of Kentucky.

DECEMBER 22, 2016

Rehearing Denied October 6, 2017.

---

BRIEFS FOR APPELLANT/CROSS–APPELLEE, CARL M. LACROSSE: James A. Harris, Jr., Paducah, Kentucky

BRIEFS FOR APPELLEE/CROSS–APPELLANT, OWNERS INSURANCE COMPANY: Thomas L. Travis, Graham D. Barth

BRIEFS FOR APPELLEE/CROSS–APPELLEE, PROGRESSIVE NORTHERN INSURANCE COMPANY: James R. Coltharp, Jr., Paducah, Kentucky

BEFORE: D. LAMBERT, MAZE AND VANMETER, JUDGES.

## OPINION

VANMETER, JUDGE:

Carl M. LaCrosse appeals from the Calloway Circuit Court's order granting summary judgment in favor of Owners Insurance Company ("Owners") and Progressive Northern Insurance Company ("Progressive"). Owners cross-appeals. In this case we must decide whether, under Illinois law, the failure of an insurance company to provide evidence of a written rejection of underinsured motorist ("UIM") coverage in an amount equal to the bodily injury liability limits renders the policy declaration amounts of UIM coverage equal to the declared liability limits under 215 ILCS[1] 5/143a–2. We must also decide whether Kentucky public policy prohibits the set off of UIM benefits with collateral sources, including liability coverage from the tortfeasor, workers' compensation benefits, and no-fault benefits. For the following reasons, we affirm in part, reverse in part and remand.

## I. Factual and Procedural Background

LaCrosse filed suit in Calloway Circuit Court seeking damages stemming from a motor vehicle accident that took place on April 27, 2009 in Murray, Kentucky. LaCrosse, an Illinois resident, was driving a commercial vehicle owned by his employer, Tim Tuttle Trucking, LLC ("Tuttle Trucking"), an Illinois company, which collided with a car driven by Sarah Darnall, a Kentucky resident. Darnall was allegedly at fault for the accident.[2] LaCrosse alleged that he suffered cervical and lumbar spine injuries and that his damages exceeded $500,000. Darnall had automobile liability insurance limits of $50,000 provided by Kentucky Farm Bureau. LaCrosse alleged that Darnall's liability insurance limits were insufficient to cover his damages and thus sought UIM benefits against both Owners, the insurer for Tuttle Trucking's trucks, and Progressive, LaCrosse's personal automobile insurance provider.

---

1. Illinois Compiled Statutes.

2. Darnall passed away after the lawsuit was initiated, and her estate was substituted as a defendant with Kenneth V. Anderson serving as administrator. For the sake of clarity, we refer to the estate as "Darnall."

Owners' Illinois motor vehicle policy provided $1,000,000 in liability coverage and recited $100,000 in UIM coverage. Owners also provided no-fault coverage. LaCrosse's policy with Progressive provided for $100,000 in liability coverage and $100,000 in UIM benefits. Owners also provided Tuttle Trucking's workers' compensation coverage. LaCrosse applied for and received workers' compensation benefits as a result of his injuries sustained in the accident.[3] Owners further paid LaCrosse $50,000 in substitution of a proposed settlement with Kentucky Farm Bureau between LaCrosse and Darnall to preserve its subrogation rights.

LaCrosse argued before the trial court that despite the recitation in the Owners policy to the contrary, the policy was statutorily required to provide UIM coverage equal to the amount of liability coverage provided absent a written rejection/request by the applicant. In an order on the priority and scope of insurance coverage,[4] the trial court disagreed, finding that an affidavit from Sandy Tuttle, an agent of Tuttle Trucking, stating that Tuttle Trucking had rejected UIM limits in excess of the face amount of the policy, was sufficient evidence of Tuttle Trucking's selection of UIM limits below the liability limits procured by the policy declarations. The trial court ruled that Illinois law applied to LaCrosse's UIM claim and thus concluded that Tuttle Trucking's policy with Owners provided only what it recited: $100,000 in UIM benefits.

Thereafter, Owners and Progressive filed motions for summary judgment, which the trial court granted, finding that LaCrosse's workers' compensation benefits, the settlement from Kentucky Farm Bureau, and relevant no-fault coverage offset Owners' and Progressive's UIM liability under both policies, reducing each's liability from $100,000 to zero dollars. Accordingly, the trial court dismissed LaCrosse's claims for UIM benefits. From that order, LaCrosse appeals.

On appeal, LaCrosse argues that the trial court erred by holding that the Owners policy only provided for $100,000 of UIM coverage when insufficient evidence of a rejection or a request for a reduction of coverage below the $1,000,000 liability coverage was presented. Furthermore, LaCrosse claims that the trial court erred by allowing Owners and Progressive to offset any potential UIM liability with LaCrosse's workers' compensation benefits and no-fault benefits. In the event that this court should reverse the trial court's judgment on either of the grounds presented by LaCrosse, Owners cross-appeals, contending that the trial court erred by finding Owners' UIM coverage to be primary and Progressive's UIM coverage to be excess.

## II. Standard of Review

CR[5] 56.03 provides that summary judgment is appropriate when no genuine issue of material fact exists and the moving party is therefore entitled to judgment as a matter of law. Summary

---

**3.** *See Carl LaCrosse v. Tim Tuttle Trucking, LLC, and Uninsured Emp'rs Fund,* Commonwealth of Kentucky Department of Workers' Claims, Claim No. 210–01243.

**4.** The trial court entered two orders regarding the scope and priority of insurance coverage, the second being an amended order entered to clarify that the trial court had relied upon

the affidavit of Sandy Tuttle in concluding that the Owners policy only provided $100,000 of UIM coverage. These orders were not made final and appealable until the summary judgment order was entered on February 18, 2015.

**5.** Kentucky Rules of Civil Procedure.

judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (internal quotations omitted). Whether summary judgment is appropriate is a legal question involving no factual findings, so a trial court's grant of summary judgment is reviewed *de novo. Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky. 2010).

### III. Arguments

### A. Choice of Law

■ First, we must address whether Kentucky or Illinois law applies in this case. The trial court applied Illinois law in determining both the policy limits of Owners and Progressive and that each insurer's UIM coverage obligation was reduced by setoffs from collateral source payments received by LaCrosse. LaCrosse argues that Kentucky law should have been applied to the setoffs issue and that Kentucky law prohibits the setoffs applied by the trial court. Kentucky has adopted the Restatement (Second) of Conflict of Laws § 188(1) (1971) approach to resolving choice of law issues. *Lewis v. American Family Ins. Group*, 555 S.W.2d 579 (Ky. 1977). Under the Restatement,

> [t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties[.]

This is often referred to as the "most significant relationship" test. The factors a court making a choice of law determination should consider include: "the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domi-

cile, residence, place of incorporation and place of business of the parties." *State Farm Mut. Auto Ins. Co. v. Hodgkiss–Warrick*, 413 S.W.3d 875 (Ky. 2013) (citing Restatement (Second) of Conflict of Laws § 188(2)).

Here, LaCrosse resides in Illinois. At the time of the accident he was driving a truck owned by Tuttle Trucking, an Illinois limited liability company, acting in the scope of his employment with the Illinois company, and both the Owners and the Progressive insurance policies/contracts were negotiated and executed in Illinois. With the exception of the accident occurring in Kentucky and the tortfeasor being a Kentucky resident, all other relevant connections in the case are to Illinois. Since Darnall settled to the limits of her Kentucky Farm Bureau policy, the only remaining issue in this case is UIM coverage under the Owners and the Progressive policies. Hence, the significant transaction is not the accident but the interpretation of the UIM coverage provided by the insurance contract. *See Grange Prop. & Cas. Co. v. Tenn. Farmers Mut. Ins. Co.*, 445 S.W.3d 51, 56 (Ky. App. 2014) (concluding that a foreign state's law applied to an insurance contract dispute involving only uninsured motorist coverage under a policy issued in the foreign state). We find that Illinois has the most significant relationship to the formation and performance of the insurance contract under the test set forth in *Lewis*.

■ Kentucky's general choice-of-law rule is only disregarded when Kentucky's public policy clearly overwhelmingly disfavors application of the foreign state's law. *Hodgkiss–Warrick*, 413 S.W.3d at 879–80. "Courts will not disregard the plain terms of a contract between private parties on public policy grounds absent a clear and certain statement of strong public policy in

controlling laws or judicial precedent." *Id.* at 880.

> While our General Assembly, through the MVRA, has evinced an overriding public policy in the area of automobile liability coverage, a mandatory form of coverage, there is no comparable public policy regarding underinsured motorist coverage, an optional coverage which may be purchased on the "terms and conditions" agreed to by the parties.

*Id.* at 887. Since Kentucky has no clear public policy on UIM coverage, and Kentucky seems to have no compelling interest in applying its own laws in this case, we therefore agree with the trial court that Illinois law is applicable to the policies at issue.[6]

## B.  UIM Limits under the Owners Policy

■ Next, we address the issue of UIM coverage under the Owners policy. 215 ILCS 5/143a–2 states, in relevant part,

(1) Additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured as provided in paragraph (2) of this Section. Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7–203 of The Illinois Vehicle Code. The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991.

(2) Right of rejection of additional uninsured motorist coverage. Any named insured or applicant may reject additional uninsured motorist coverage in excess of the limits set forth in Section 7–203 of the Illinois Vehicle Code by making a **written** request for limits of uninsured motorist coverage which are less than bodily injury liability limits or a **written** rejection of limits in excess of those required by law. This election or rejection shall be binding on all persons insured under the policy. In those cases where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or to reject limits in excess of those required by law, the insurer need not provide in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a **written** request for such coverage.

(3) The original document indicating the applicant's selection of uninsured mo-

---

**6.**  We further note that LaCrosse's argument that Owners and Progressive have waived their right to argue that Illinois law applies, since each utilized Kentucky law with respect to workers' compensation issues, basic reparations benefits, and substitution of payment for the Kentucky Farm Bureau settlement, is unfounded. Illinois law was appropriately applied in each of the above respects, and we further note that LaCrosse chose the Kentucky forum and Owners and Progressive were forced to defend the claims in that forum.

torist coverage limits shall constitute sufficient evidence of the applicant's selection of uninsured motorist coverage limits. For purposes of this Section any reproduction of the document by means of photograph, photostat, microfiche, computerized optical imaging process, or other similar process or means of reproduction shall be deemed the equivalent of the original document.

(emphasis added) (footnote omitted). Section 1 of this statute states that auto insurance policies must provide insureds with UIM coverage equal to bodily injury liability coverage unless such UIM coverage is specifically rejected by the insured **as provided in Section 2**. Section 2 then states that an insured may reject UIM coverage equal to liability coverage in one of two ways: 1) by making a written request for UIM limits that are below the procured liability limits; or 2) by making a written rejection of UIM coverage above the minimum required by law. Stated simply, UIM coverage is equal to the amount of liability coverage unless the insurance company obtains a written rejection/request from the insured or applicant. *Lee v. John Deere Ins. Co.*, 208 Ill.2d 38, 280 Ill.Dec. 523,802 N.E.2d 774, 777 (2003).[7] Section 3 simply provides that the original document, usually an application selecting UIM coverage limits, is sufficient evidence of the applicant/insured's selection of UIM benefits.

■ Here, LaCrosse argues that insufficient evidence supported the trial court's conclusion that a written request or rejection of the statutorily mandated UIM coverage limits existed. Since the original policy application was lost, the trial court relied only on an affidavit provided by Sandy Tuttle of Tuttle Trucking stating that the UIM coverage selected was accurately reflected in the policy declarations of $100,000. LaCrosse maintains that this is insufficient to show rejection of the statutorily required UIM coverage. In return, Owners argues that although a written rejection on an insurance application would be "sufficient" evidence per 215 ILCS 5/143a–2(3), other evidence can also sufficiently support an insured's election to reduce UIM coverage below the amount of liability coverage.

We agree with LaCrosse that the trial court erred in finding that Sandy Tuttle's affidavit was sufficient evidence of a proper request for UIM benefits below the procured liability limits. While we agree that Section 3 does not state that an original document showing the insured's selection of a certain amount of UIM coverage is the only way to establish sufficient evidence of that selection, Section 2 does provide that a **written** request or rejection is required to subvert the automatically equivalent UIM coverage provided for in Section 1. Here, the trial court had no evidence that any **written** request for lower UIM limits ever existed or was ever provided to Owners. Absent evidence of such a written request/rejection, Section 1 of 215 ILCS 5/143a–2 provides that UIM coverage is to be included in an amount equal to the insured's liability limits, which is $1,000,000 in the instant case. We therefore vacate this portion of the trial court's judgment and remand to that court for a determination as to whether Tuttle Trucking provided a written request or rejection of the higher UIM limits.

---

**7.** Owners correctly points out that *Lee* involves an earlier version of the relevant Illinois statute, which was amended in 2004 to remove the requirement that a motor vehicle insurance application contain a space for indicating the rejection of additional UIM coverage. However, we find this irrelevant to our analysis, which will focus on the current version of the statute.

### C. Offsetting UIM Coverage with Collateral Sources

■ LaCrosse next argues that Owners' and Progressive's UIM coverage should not have been permitted to be offset by his workers' compensation benefits, the Kentucky Farm Bureau settlement, and relevant no-fault coverage. We disagree. As discussed above, Illinois law applies to all aspects of this case. Illinois law permits offsetting by a tortfeasor's insurance and workers' compensation benefits, as long as the parties agreed to do so by contract. *See Sulser v. Country Mut. Ins. Co.*, 147 Ill.2d 548, 169 Ill.Dec. 254, 591 N.E.2d 427 (1992) (permitting offset to limits for workers' compensation benefits paid); *Zdeb v. Allstate Ins. Co.*, 404 Ill. App.3d 113, 343 Ill.Dec. 698, 935 N.E.2d 706 (2010) (permitting offset for medical coverage); *Banes v. Western States Ins. Co.*, 247 Ill.App.3d 480, 186 Ill.Dec. 579, 616 N.E.2d 1021 (1993) (permitting offset for tortfeasor's liability limits); *see also* 215 ILCS 5/143a–2(4) ("The limits of liability for an insurer providing [UIM] coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle."). The Owners policy states:

> The amount we [Owners] pay will be reduced by any amounts paid or payable for the same bodily injury:
>
> (1) under Section II—LIABILITY COVERAGE of the policy;
>
> (2) under any workers compensation or similar law; or
>
> (3) by or on behalf of any person or organization who may be legally responsible for the bodily injury.

The Progressive policy also states the following:

> The limits of liability under this Part III [UIM coverage] for bodily injury will be reduced by all sums:
>
> 1. paid because of bodily injury by or on behalf of any person or organizations that may be legally responsible;
>
> 2. paid under Part 1—Liability to Others: and
>
> 3. paid or payable because of bodily injury under any workers' compensation law.
>
> We will not pay under this Part III any expenses paid or payable under Part II—Medical Payments Coverage.

Therefore, the trial court correctly determined that under Illinois law, setoffs to UIM liability were both permissible and contractually agreed upon by the parties.

■ In addition, we do not agree with LaCrosse's contention that Kentucky public policy bars the UIM limits reduction permitted by Illinois law. This argument, in a case involving similar facts and claims, was recently addressed and rejected by this Court in *Ward v. Nationwide Assurance Co.*, No. 2012–CA–000809–MR, 2014 WL 7339238 (Ky. App., Dec. 24, 2014). In *Ward,* we held that in light of *Hodgkiss–Warrick,* 413 S.W.3d at 879–80, the Kentucky public policy exception to our traditional conflicts-of-law analysis does not apply when another state's law and the relevant insurance contract both permit UIM benefits to be set off. As in *Ward,* the legal involvement of the Kentucky resident in this case has concluded, and all that remains is a non-resident victim and an accident that occurred in Kentucky. *Id.* at \*4. Accordingly, no reason exists to interfere with the law as set forth by Illinois for its citizens when the UIM setoff involved would not be harmful to the people of Kentucky. *See id.* Thus, the trial court correctly used offsets to reduce

Owners' and Progressive's UIM liability.[8] However, the amount to which that liability has been reduced under the Owners policy must be reconsidered on remand given our conclusion that the trial court must determine whether Tim Tuttle Trucking made a written rejection of the higher UIM coverage.

### D. Owners' Cross–Appeal

■ Lastly, since we reverse the trial court's ruling and hold that the trial court must determine whether the Owners policy's UIM limits should be equal to the liability limits contained in the policy, thus potentially increasing Owners' UIM liability to $1,000,000, we must address Owners' argument on cross-appeal that the trial court erred by finding that the Owners policy in this case was primary while the Progressive policy was excess. Both LaCrosse's policy on his personal automobiles with Progressive and the Owners policy contain "other insurance" provisions delineating priority of coverage between that policy and other applicable insurance. The Progressive "other insurance" provision contains an "excess clause" that makes its coverage excess for any accident not involving a "covered auto." It is undisputed that the truck LaCrosse was driving during the accident was not a "covered auto" as defined in the Progressive policy. The Owners "other insurance" provision states:

> If there is other **applicable** uninsured or underinsured motorist coverage, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all available coverage limits... However, any insurance we provide with respect to a vehicle that is not a covered auto will be excess over any other uninsured or underinsured motorist coverage.

(emphasis added, original emphasis omitted). Neither party disputes that the truck driven by LaCrosse during the accident was a covered auto under the Owners policy.

In addition to the "excess clauses," both policies include *pro rata* clauses that make the respective policy proceeds subject to distribution on a *pro rata* basis with any other applicable insurance, or, put simply, in the proportion that the policy liability limit bears to the total of all available coverage limits. Owners argues that its UIM coverage and Progressive's UIM coverage should be applied on a *pro rata* basis.

■ As discussed above, Illinois law applies to this dispute. When evaluating multiple insurance policies, Illinois courts must "reconcile the applicable causes of conflicting policies, and thereby give effect to the intention of all the parties, whenever possible." *Putnam v. New Amsterdam Cas. Co.*, 48 Ill.2d 71, 269 N.E.2d 97, 101 (1970). Ordinarily, when two policies contain the same type of "other insurance" clause, the clauses will be deemed incompatible and cancel each other out. *State Farm Fire and Cas. Co. v. Utica Nat'l Ins. Group*, 375 Ill.App.3d 230, 313 Ill.Dec. 792, 873 N.E.2d 416, 419 (2007). The result is usually to apply the policies on a *pro rata* basis. *See id.*; *Continental Cas. Co. v. New*

---

**8.** As of August 2014, LaCrosse had received $136,850.11 from Owners in workers' compensation benefits. In addition, payments of up to $1,000 in potential med pay benefits and up to $10,000 in potential basic reparations benefits are also available under the Owners auto policy to set off Owners' UIM limits. Payments of up to $1,000 in potential medical pay benefits under the Progressive policy would also serve to offset Progressive's UIM benefits. Finally, the $50,000 liability insurance payment tendered by Kentucky Farm Bureau and substituted by Owners reduces both Progressive's and Owners' UIM policy limits by $50,000.

*Amsterdam Cas. Co.,* 28 Ill.App.2d 489, 171 N.E.2d 406, 409 (1960).

Here, however, the Owners excess clause applies only when the accident does not involve a vehicle owned by its insured, Tuttle Trucking. Because LaCrosse was driving a vehicle owned by Tuttle Trucking at the time of the accident, we agree with Progressive that Owners' excess clause does not apply. The Progressive excess clause only applies when the accident does not involve a "covered auto." Since La-Crosse was not driving a "covered auto" at the time of the accident, Progressive's excess clause is implicated and serves to make Progressive's UIM coverage excess to other applicable coverages.

Because Owners' excess clause does not apply and Progressive's does, we find no need to implicate either policy's *pro rata* clauses. Neither policy is "applicable" at the same time as the other policy; Owners' UIM coverage will be applied first as the primary, since the excess clause is not triggered, and Progressive's UIM coverage will only be applied as excess. The trial court therefore did not err by holding the Owners' UIM coverage to be primary and the Progressive policy to be excess.

## IV. Conclusion

In sum, the Calloway Circuit Court's findings regarding choice of law, offsetting, and the finding that the Owners policy is primary are affirmed, insofar as they are consistent with this opinion. The grant of summary judgment is reversed with respect to the amount of Owners' UIM limits, and the case is remanded for findings concerning whether Tuttle Trucking provided Owners with a written request or rejection of UIM limits equal to the liability limits set forth in the policy declarations.

MAZE, JUDGE, CONCURS.

D. LAMBERT, JUDGE, CONCURS IN PART AND DISSENTS IN PART.

D. LAMBERT, JUDGE.

I concur with the majority in holding that insufficient evidence of record exists that would show a written request or rejection of the equivalent UIM benefits by the insured. However, I must respectfully dissent, in part, from my colleagues and would instead hold that the matter should not be remanded for further proceedings on the issue of waiver of equivalent UIM coverage.

The trial court afforded Owners Insurance Company and Tuttle Trucking ample opportunity to offer adequate proof of a written request or rejection of the equivalent UIM coverage and then erroneously found the affidavit of Sandy Tuttle amounted to such proof. A simple reversal of the erroneous ruling, without remanding for duplicative proceedings, better serves the interests of justice. Otherwise, I concur with the majority as to all other matters addressed.