NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0462n.06

No. 22-5991

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 06, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| LAURA N. WOODS, | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) | |
| | ) | |
| STANDARD FIRE INSURANCE COMPANY d/b/a TRAVELERS, | ) | |
| | ) | |
|     Defendant-Appellee. | ) | OPINION |

Before: MOORE, GIBBONS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Laura Woods brought an insurance contract claim case against Standard Fire Insurance Company, her car's insurer, based on a car accident in which she suffered over $250,000 in damages. She was paid the limits of the other driver's policy, totaling $50,000. Standard Fire paid Woods $10,000 in personal injury protection (PIP) benefits and $1,000 in medical pay, but she sought the policy limits of $100,000. Standard Fire offered policy limits minus the $61,000 Woods had already received, based on a set-off provision in its policy. Woods rejected that offer, ultimately filing suit against Standard Fire for bad faith, Kentucky Unfair Claims Settlement Practices Act (KUCSPA) violations, and violations of the Kentucky Motor Vehicles Reparation Act (KMVRA). The district court granted summary judgment to Standard Fire, and Woods timely appealed. For the reasons below, we **AFFIRM** the district court's Order on the bad faith, KUCSPA, and punitive damages claims. We **REVERSE**

**AND REMAND** the Order as to Woods's KMVRA claim for the trial court to assess interest consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

In the winter of 2016, Laura Woods, a Kentucky resident, had possession and use of her father's Toyota Tacoma. Woods's father, a Connecticut resident, had the truck registered in Connecticut and insured by a Connecticut insurer, Standard Fire. Woods was not a named insured on the policy.

On December 18, 2016, Woods was hit by a Honda Accord driven by Joshua Eaves. Eaves was responsible for the accident, which caused Woods damages exceeding $250,000. Eaves's policy paid its bodily injury liability limits ($50,000); Standard Fire paid Eaves medical pay of $1,000 and PIP benefits of $10,000.[1] In total, Woods received $61,000.

On September 14, 2018, Woods demanded that Standard Fire pay her the underinsured motorist (UIM) policy limits of $100,000. Standard Fire's policy included a Limits of Liability provision that stated,

> C. The limit of liability will be reduced by all sums:
>> 1. Paid to "insureds" because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Coverage A; and
>> 2. Paid or payable because of the "bodily injury" under any workers' compensation law or similar law.
>
> D. No one will be entitled to receive duplicative payments for the same elements of loss under this Coverage Section and:
>> 1. Any other Coverage Section or part of this policy; or
>> 2. Any other personal auto policy issued to you by use or any of our affiliates[.]

---

[1] PIP benefits may also be referred to as "Basic No-Fault Coverage" or "Basic Reparations Benefits." *See* Ky. Rev. Stat. Ann. § 304.39.020.

Citing this setoff provision, Standard Fire subtracted the $61,000 in benefits she had received and offered Woods $39,000. Three weeks after that offer, Woods's attorney responded with a coverage letter explaining that Kentucky law governs the claim and prohibits Standard Fire from applying the set-off provision, instead requiring it to pay the full $100,000 UIM policy limit. Standard Fire then assigned the claim to its adjuster, Matt Parsons, who requested legal advice from his manager, Chris Pencak. Pencak assigned the legal research to Enante Darout, an in-house attorney at Standard Fire who alleges that she worked on the assignment for 20 to 25 hours. She sought advice from in-house counsel Patricia Allen, writing that after doing "some more digging," Darout believed Connecticut law applied. The next day, however, Darout emailed Allen again, stating that "[w]here the issue affects a Kentucky resident, as it does in this case, a court may be inclined to preserve and protect its own people." Allen responded, "but do we want to concede that point now? Do you feel there is enough of an interest that [Kentucky] law will apply? I agree that [Kentucky] has an interest[,] but is it compelling and does it outweigh any interest [Connecticut] has?" On November 28, 2018, Darout replied that she believed the case would likely end up in litigation, but that she thought Connecticut law would ultimately apply.

Darout issued her coverage opinion to Parsons later that day, concluding that Connecticut law would apply under a significant relationship analysis. She determined that on the choice of law question, Connecticut law would apply, and the set-off provision was valid. Based on this coverage letter, Standard Fire reiterated its $39,000 offer to Woods on December 6, 2018.

Believing that Kentucky law applied to her claim, Woods rejected the $39,000 offer. She sued in Fayette County Circuit Court, arguing that under Kentucky law's public policy exception she was entitled to the full UIM policy limit of $100,000. Woods sought a declaratory judgment for the policy limit (Count I), and asserted claims for breach of contract (Count II), violation of

the KMVRA (Count III), common law bad faith (Count IV), violations of KUCSPA (Count V), and punitive damages (Count VI).

### B.    Procedural Background

The trial court bifurcated the case to address the choice of law question initially. The court partially granted Woods's motion for summary judgment on August 14, 2019, holding that Kentucky law applied and therefore the set-off provision was invalid. On September 30, Standard Fire paid Woods the full policy limits of $100,000. The parties then proceeded to discovery on the remaining counts, a process that took nearly three years.[2]

The district court ultimately granted summary judgment to Standard Fire on Counts II, III, IV, V, and VI. In relevant part, the court found that "[t]here is no evidence that Standard Fire engaged in conscious wrongdoing or was somehow reckless with regard to whether Connecticut law applied to the policy," and ruled in favor of Standard Fire on Woods's bad faith, KUCSPA, and KMVRA claims; the court also held that Woods was not entitled to punitive damages or any KMVRA remedy. Woods timely appealed the district court's Order. We address Woods's claims below.

## II.    ANALYSIS

The district court decided this case on summary judgment, which is reviewed de novo. *Fortney & Wygandt, Inc. v. American Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 310 (6th Cir. 2010). On summary judgment, a court construes the evidence in the light most favorable to the nonmoving

---

[2] Regarding discovery materials, Woods argues to this court that the district court should have considered deposition testimony taken from retired Kentucky Supreme Court Justice Daniel Venters, as well as expert Stuart Setcavage, in determining bad faith. However, Woods's motion to consider this testimony was denied by the court as moot upon entry of summary judgment in favor of Standard Fire. Woods states that "[n]one of [the Venters or Setcavage] evidence was acknowledged or considered by the District Court," but does not challenge its exclusion before this court. Accordingly, we limit our factual review to admitted evidence on the record.

party and draws all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

We turn first to the operation of the KMVRA in this case. Then, we turn to Woods's entitlement to KMVRA remedies.

### A.        The KMVRA's Exclusivity

The Kentucky Motor Vehicle Reparations Act (KMVRA) explicitly prohibits "deduction[s] or set-off[s]" in the payment of basic reparation benefits. Ky. Rev. Stat. Ann. §304.39-250. It states that "every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits." *Id.* at § 304.39-030(1). Under Kentucky law, if a statute makes an act unlawful and specifies that law's civil remedy, then "the aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans,* 700 S.W.2d 399, 401 (Ky. 1985). The Kentucky Supreme Court has held that the KMVRA is the exclusive remedy for violations of that Act. *See Foster v. Kentucky Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553 (Ky. 2006). Because the KMVRA makes delaying or denying underinsured motorist benefits through applying deductions or set-offs unlawful and specifies its remedy (namely, interest paid on the delayed or denied benefits, Ky. Rev. Stat. Ann. § 304.39-210), parties asserting the KMVRA are limited to the remedies it provides. *Foster*, 189 S.W.3d at 557.

The KMVRA is thus the "exclusive remedy where an insurance company wrongfully delays or denies payment of no-fault benefits." *Id.* In *Foster*, the plaintiff raised a KMVRA claim, as well as claims for punitive damages under the Kentucky Unfair Claims Settlement Practices Act (KUCSPA) and for bad faith. Foster had been denied work loss benefits for a job she was offered but was "advised by her physician to decline on account of the accident related injuries." *Id.* at 555. Because Foster raised both bad faith and KMVRA claims related to the denial of work

loss benefits, the court was tasked with deciding "whether there is a conflict between [KUCSPA] and the [KMVRA]." *Id.* The Kentucky Supreme Court held that the KMVRA "preempts general insurance law . . . and establishes remedies for violations of the [KMVRA] statute." *Id.* at 577.Accordingly, the Court affirmed the lower court's dismissal of Foster's non-KMVRA claims, holding "[h]ere, the circuit judge dismissed the claim of Foster seeking punitive damages under the [KUCSPA], but allowed the suit based on the [K]MVRA to proceed to a jury trial. Because the [K]MVRA is the exclusive remedy, the decision of the circuit judge was correct." *Id.*

*Foster* holds that if a claim is brought under the KMVRA, then that statute represents the *only* remedy available for the conduct alleged. *Id.* In *Hartley v. Geico Casualty Co.*, the Kentucky Court of Appeals applied the Kentucky Supreme Court's directive in *Foster* and held that the plaintiffs' "bad faith claim under [K]UCSPA is barred as the [K]MVRA provides the exclusive remedy for the late payment of basic reparation benefits in the form of interest and reasonable attorney fees." *Hartley v. GEICO Cas. Co.*, No. 2003-CA-001134-MR, 2006 WL 2786929, at *3 (Ky. Ct. App. Sept. 29, 2006). Thus, under *Foster*, bad faith and KUCSPA claims premised on behavior surrounding a delay or denial of the payment of UIM benefits—in addition to claims based on the denial or delay itself—are preempted by the KMVRA. Other cases on the KMVRA have likewise held that the Act "subsumes" claims of bad faith when those claims are based on the same underlying delay or denial of UIM benefits. *Allen v. Safe Auto Ins. Co.*, 332 F. Supp. 2d 1044, 1049 (W.D. Ky. 2004) (citing *Phoenix Healthcare of Kentucky, L.L.C. v. Kentucky Farm Bureau Mut. Ins. Co.*, 120 S.W.3d 726, 727-28 (Ky. App. Ct. 2003).

Here, the essence of Woods's complaint is Standard Fire's "effective denial" of her full UIM benefits under the set-off provision. Woods argues:

> other conduct by [Standard Fire] constituted bad faith, including twice requiring releases as a condition of settlement, other UIM setoffs, exercising undue influence over the

> outcome of SFIC employee E. Darout's review [of whether to apply the setoff provision], Darout's qualifications, the paucity of her legal analysis, H. Green's premature decision on setoffs, and other claims-handling irregularities.

But each of these allegations directly stems from and undergirds the claim that Standard Fire improperly delayed or denied UIM benefits. Here, as in *Hartley*, Woods's bad faith and KUCSPA claims arise out of the circumstances by which she was effectively denied coverage. Because Woods alleges the same underlying conduct for each of her claims—a poorly handled insurance claim leading to the effective denial of UIM benefits—the KMVRA controls. Thus, the district court appropriately dismissed Woods's bad faith and KUCSPA claims on summary judgment because the KMVRA preempts those claims in this context. *See Foster*, 189 S.W.3d at 557. And because punitive damages are available only under her bad faith and KUCSPA claims, the district court appropriately denied those damages as well. *See id.* Because both the set-off provision and any effective delay or denial of UIM benefits are prohibited under the KMVRA, that Act provides the exclusive remedy.

### B. KMVRA Remedy

Because the KMVRA controls this claim, we must decide whether there was a delay or denial of payment, and whether the delay or denial was without a reasonable foundation. Under the KMVRA, if payment for UIM benefits is overdue by at least 30 days or is denied, then repayment must be made with interest. Ky. Rev. Stat. Ann. § 304.39-210. "Overdue payments bear interest at the rate of twelve percent (12%) per annum, except that if delay was without reasonable foundation the rate of interest shall be eighteen percent (18%) per annum." *Id.* Additionally, under the KMVRA, a court may award a claimant attorney's fees "if the denial or delay was without reasonable foundation." Ky. Rev. Stat. Ann. § 304.39-220(1).

Before discussing whether Standard Fire had a reasonable foundation, we must determine whether Standard Fire denied or delayed payment of PIP benefits to Woods. Standard Fire had already directed payment of the $10,000 in PIP benefits before Woods requested its policy limits. After her request for the UIM policy limits, Standard Fire sought to use its set-off provision to reduce the basic UIM benefits by the benefits Woods already received including the $10,000 she received in PIP benefits. Woods argues that Standard Fire functionally delayed granting Woods the PIP benefit of $10,000. Viewing the evidence in the light most favorable to Woods and taking her evidence as true, we conclude that the time between the assertion of the set-off and the payment in full to Woods constituted a "delay or denial" of UIM benefits, as it unlawfully used a set-off to deprive Woods of money guaranteed to her under the insurance policy.

The Kentucky Supreme Court has set out the test for determining "reasonable foundation" under the KMVRA. In *Lainhart*, the Kentucky Court of Appeals held that although the insurer was required to pay Lainhart under the KMVRA, its initial delay or denial was reasonably founded because the insurer lacked proof of the amount of loss. *Auto. Club Ins. Co. v. Lainhart*, 609 S.W.2d 692, 694 (Ky. Ct. App. 1980). *Lainhart* held that "the assertion of a legitimate and bona fide defense by the reparation obligor constitutes reasonable foundation for delay under KRS 304.39-210 and KRS 304.39-220, and this is not changed by the fact that the case is ultimately decided against the obligor." *Id.* at 695.

The *Lainhart* rule that a reasonable foundation exists when an insurer has a bona fide defense was bolstered by the Kentucky Supreme Court's holding in *Ohio Cas. Ins. Co. v. Atherton*, 656 S.W.2d 724 (Ky. 1983). There, an insurer denied subrogation rights of a claim after the death of the injured party. *Id.* at 725. The insurer argued, and the Court of Appeals agreed, that the KMVRA "by its exact wording, precludes subrogation and reimbursement of death benefits." *Id.*

at 726.  But that was clearly untrue: the KMVRA defined "[i]njury" and "injured person" as "bodily harm, sickness, disease, or *death*."  Ky. Rev. Stat. Ann. § 304.39-020(4) (emphasis added). By including "death" in the definition of injury, the statute's text explicitly proscribed the insurer's actions; nevertheless, the court did not find a lack of reasonable foundation that would support the 18% higher interest rate.  *Atherton*, 656 S.W.2d at 726. There, a misunderstanding of the law, even though patently incorrect, still constituted a reasonable foundation for denying or delaying payment. *Id.*

Here, Standard Fire's defense for its delay in payment is that it erred in its choice of law determination.  While it was incorrect in making that legal determination, choice of law cases can present difficult questions.  *See, e.g., LaCrosse v. Owners Ins. Co.*, 531 S.W.3d 25, 30-31 (2016). Standard Fire's internal communications regarding the incorrect legal conclusion do not indicate that unreasonable or willful incompetence led to this result.  Its misapplication of the law, moreover, is more plausible than that in *Atherton*, which was statutorily foreclosed. On this record, we do not conclude that Standard Fire lacked a reasonable foundation for its position.

Woods similarly argues that Standard Fire acted without a reasonable foundation by requesting a release of liability as a condition of settlement. But insurers may seek release of liability or indemnification as a condition of a claim's settlement.  *See Shaheen v. Progressive Cas. Ins. Co.*, 673 F. App'x 481, 486 (6th Cir. 2016).  Standard Fire's attempt to do so does not support an allegation that it acted without a reasonable foundation, and therefore, the 12% interest applies to Woods's claim. Because we hold that Standard Fire did not lack reasonable foundation to deny or delay the claim, Woods may not recover attorney's fees. Ky. Rev. Stat. Ann. § 304.39-220(1).

### III.    CONCLUSION

Woods's claims are governed by the KMVRA.  The KMVRA preempts Woods's bad faith and KUCSPA claims, and the district court appropriately dismissed them, as well as Woods's claim for punitive damages and attorney's fees.  Under the KMVRA, Woods is entitled to 12% interest pursuant to KRS § 304.39-210. Accordingly, this case is **AFFIRMED IN PART, REVERSED IN PART,** and **REMANDED** to determine the amount recoverable under the statute as applied.